STATE EX REL. WILLIAM D. TAYLOR v. STANLEY H. OSBORN, HEALTH COMMISSIONER, STATE OF CONNECTICUT

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE NO. 46368

Memorandum filed August 17, 1948.

*Pullman & Comley,* of Bridgeport, for the Plaintiff.

*Harry L. Brooks,* Assistant Attorney General, for the Defendant.

PARMELEE, J.   This is an action for a mandamus to compel the defendant, Stanley H. Osborn, health commissioner of the state of Connecticut, to issue, pursuant to General Statutes, § 2767, a certificate of registration to the plaintiff, William D. Taylor, as a person entitled to practice natureopathy in this state.

On Nov. 14, 1946, the Connecticut state board of natureopathic examiners certified that William D. Taylor, N. D., having appeared before the board and having been duly examined according to law, had been found qualified to practice natureopathy in the state of Connecticut, all pursuant to General Statutes, § 2770, as amended by § 1127c, Cum. Sup. 1935, and § 545g, Sup. 1943.   Thereafter, on December 20, 1946, the plaintiff filed with the state department of health duplicate certificates of approval and on December 28, 1946, paid a $2 registration fee, all as required by § 2767.   The defendant, as health

commissioner and administrative head of the state department of health, has refused to issue to the plaintiff the certificate of registration for which the statute provides and without which the plaintiff cannot practice naturopathy in this state. These facts are undisputed on the first defense of the defendant's return.

Th allegations of the substituted second defense to defendant's return seek to invoke the discretionary power of the court. Defendant claims that the facts proven under the allegations of this defense establish a sufficient basis for the court to refuse its aid in these proceedings by way of mandamus.

This defense alleges in paragraph 1 that the certificate of approval obtained by the plaintiff from the Connecticut state board of natureopathic examiners was "obtained illegally and through fraud and deceit," and that the plaintiff "perpetrated a fraud upon the State of Connecticut" as set forth in paragraphs 2-10 inclusive.

Paragraph 2 alleges that the certificate of approval granted to plaintiff by the Connecticut board of natureopathic examiners was based upon a reciprocity agreement with another state under § 2770, as amended by §§ 1127c and 545g. This is an undisputed fact. Paragraphs 3-8 inclusive allege in substance that in January, 1943, the state of Tennessee first established laws regulating the practice of naturcopathy in that state and established a board of examiners; that a president and a secretary-treasurer of said board engaged in a fraudulent racket involving the solicitation and sale of licenses to practice natureopathy in the state of Tennessee to persons who did not qualify under the laws of that state; that said president and said secretary-treasurer were indicted and convicted in Tennessee for fraudulent and corrupt acts in connection with the conduct of their official duties and that the plaintiff was one of many who obtained a license in Tennessee while they were in office. Paragraph 9 alleges that the plaintiff was a knowing beneficiary of these corrupt practices. Paragraph 10 alleges that the plaintiff fraudulently obtained his license to practice natureopathy in South Carolina; that upon this license he fraudulently obtained his Tennessee license and that the certificate of approval obtained in Connecticut in 1946 was based on these licenses fraudulently obtained in South Carolina and Tennessee.

The certificate of approval granted by the Connecticut board of natureopathic examiners was issued to the plaintiff without examination based upon an agreement of reciprocity existing between the state of Connecticut, represented by said board, and the state of South Carolina under the authority of § 2770 as amended by § 1127c and § 545g. It is to be presumed that such certificate was issued in accordance with the applicable provisions of statute law. The action of the board in this respect is not subject to collateral attack. *State ex rel. Lacerenza* v. *Osborn,* 133 Conn. 530, 535. The defendant's duty to issue the certificate of registration under the provisions of § 2767 was ministerial and not discretionary. *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 416; *State ex rel. Lacerenza* v. *Osborn,* supra. Although the health commissioner has no discretion in the performance of the act demanded of him, there is a discretionary power in the court in a mandamus proceeding, which is "a remedial process and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public or private mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid to a palpable fraud. The relator must come into court with clean hands." *State ex rel. Lacerenza* v. *Osborn,* supra, 534. It was also held in the *Lacerenza* case at page 535, quoting from *State ex rel. Hansen* v. *Schall,* 126 Conn. 536, 543, that "if it should appear that the right was to be asserted contrary to the public interest, the court might refuse its aid in mandamus proceedings."

The undisputed facts in the alternative writ in the instant case set out the necessary elements essential to obtaining relief by mandamus (*State ex rel. Lacerenza* v. *Osborn,* supra, 534). However, the establishment of the strict legal right is not of itself conclusive of the right to relief by mandamus because "the writ is not issued as a matter of right, but in the exercise of a judicial discretion which takes into account other considerations than the legal right of the relator." *Lacerenza* case at pages 534, 535, and other cases cited therein.

The substituted second defense alleges facts, proof of which are claimed to constitute fraud on the part of the plaintiff in obtaining the certificate of approval granted to him by the Connecticut state board of natureopathic examiners. This certificate

was based upon a reciprocity agreement with the board of na-tureopathic examiners of the state of South Carolina, in which state the plaintiff was licensed in 1938. Defendant has alleged that plaintiff obtained his license to practice natureopathy in South Carolina by fraud and deceit and without compliance with the laws of that state. The evidence before this court fails to establish this claim. It does disclose that plaintiff was licensed in South Carolina in 1938 by the natureopathic examining board of that state after taking and passing written examinations and practical demonstration, pursuant to the laws of that state, on subjects comparable and even more extensive than those required by the state of Connecticut by General Statutes, § 2768. Plain-tiff had completed a four-year course at the U. S. School of Natureopathy at Newark, New Jersey, where he attended classes for nine consecutive months during each of the four years. He graduated in June, 1925, with the degree of doctor of natureopathy. His prior schooling complied with statutory standards and he has also engaged in postgraduate studies. There is no evidence that the plaintiff obtained his South Carolina license except through proper procedure and adequate qualifica-tions. In 1943, plaintiff was licensed to practice natureopathy in the state of Tennessee without examination, based upon his licensure in South Carolina. At the time he received his Ten-nessee license the board in that state was engaged in the fraudu-lent issuance of licenses to unqualified persons. This fact was unknown to plaintiff at the time he applied for and received his Tennessee license. He did not participate in nor benefit by this fraudulent precedure, nor was he involved in any way with the illegal practices finally resulting in the indictment and convic-tion of the president and secretary-treasurer of the Tennessee board. He has never practiced natureopathy in Tennessee nor was his licensure in that state used as the basis of approval in Connecticut by reciprocity. Plaintiff has been engaged in the active practice of natureopathy for the past fourteen years in the states of South Carolina, New York and New Jersey. The latter two states have no laws requiring the licensure of nature-opathic physicians. His practice has been largely in the state of New Jersey, where he now maintains an office and carries on a busy practice. No evidence whatever was offered to assail the professional ability or capacity of the plaintiff.

The defendant's further defense, filed October 18, 1947, al-leges that on or about July 11, 1947, the Connecticut state board of natureopathic examiners revoked the certificate of approval

granted to plaintiff on November 14, 1946, and plaintiff's reply alleges that said certificate was reinstated on November 6, 1947.

On July 10, 1947, as a result of information given to the natureopathic examining board by the attorney general's office that the natureopathic school from which plaintiff graduated was a nonapproved school, said board notified the plaintiff that the certificate of approval which they had granted on November 14, 1946, was revoked. This action was taken without notice to the plaintiff and without a hearing at which he might be present and under no statutory authorization or other procedure which satisfies the constitutional requirement of due process of law. Subsequently, the board determined that this information was erroneous and that at the time of plaintiff's graduation in 1925 said school was a legally chartered, reputable school or college of natureopathy approved by the board, and notified plaintiff that his certificate of approval had been reinstated. The authority to approve a school or college of natureopathy as a prerequisite to granting a certificate of approval to an applicant rests with the board itself under § 2767.

The practice of natureopathy was first regulated in this state by chapter 245 of the Public Acts of 1923, approved June 1, 1923. Under this act the board of natureopathic examiners was authorized to issue the license to practice and was also authorized to suspend or revoke the license for cause after a hearing. This procedure was amended and changed by chapter 317 of the Public Acts of 1927 (§ 5), providing for licensure or a certificate of registration from the state department of health upon receipt by that department of a certificate of approval from the board of natureopathic examiners, substantially as required by the present effective statutes. Said chapter 317 further provides for suspension, revocation and annulment of the license or registration by the state department of health after hearing, with provision for appeal to the courts and provides that the portions of chapter 245 of the Public Acts of 1923 relating to the suspension or revocation of licenses inconsistent with chapter 317 are repealed.

Our statutes do not and never have provided authorization to the board of natureopathic examiners to revoke the certificate of approval granted by them pursuant to applicable statutes, nor can there be any question of such legislative intent since adequate statutes have been provided which make available proper procedure under constitutional requirements of due process of

law. See *Brein* v. *Connecticut Eclectic Examining Board*, 103 Conn. 65. Section 2767 provides that when a certificate of approval has been granted by the examining board the person receiving it shall, upon compliance with certain acts (which in the present case have been performed), receive from the state department of health a certificate of registration including a statement that the person named therein is qualified to practice natureopathy in this state. This is his license. The issuance of this registration or license by the state department of health is a ministerial act and a duty which is not discretionary on the part of that department. *State ex rel. Lacerenza* v. *Osborn,* supra, 533. General Statutes, § 2741, as amended by § 475f, Sup. 1941, and § 2742, as amended by § 476f, provide for the suspension, revocation or annulment of licenses by the state department of health and for hearing procedure. It is provided that proceedings may be begun by the state department of health by filing written charges, verified by affidavit, with the examining board. The causes for which a license may be revoked are listed. The examining board must hold a hearing after notice to the practitioner, who has a right to be heard and may appear in person or by counsel, or both, and may produce witnesses and evidence in his behalf and may question witnesses. The examining board has the power to administer oaths, subpoena witnesses and papers, examine witnesses, and compel the testimony of witnesses, and may issue commissions to take testimony. The attorney general shall, upon request, furnish legal assistance to the board. If the examining board, by a majority vote of its members, shall find the practitioner guilty of any of the charges preferred against him, it may, on written notice to the practitioner, reprimand or otherwise discipline him, or it may recommend to the state department of health that the certificate of registration of the practitioner be revoked or suspended. If the practitioner shall be found not guilty, the board shall order a dismissal of the charges. Upon receipt of a recommendation that a certificate of registration be revoked or that it be suspended, the state department of health shall issue a revocation or suspending order in compliance with such recommendation. Section 2743 provides for an appeal to the Superior Court. It is the state department of health which is authorized to revoke the certificate of registration or license.

The substituted second defense to the defendant's return alleges that the plaintiff's certificate of approval was obtained

through fraud and deceit. Our statute laws have laid out still another method of procedure in such a case which avoids resort to preliminary proceedings either by the board of examiners or the state department of health. The practice of natureopathy is the practice of one of the healing arts. General Statutes, § 2735. General Statutes, § 153, provides as follows: "To proceed against physicians accused of obtaining licenses through misrepresentation. The attorney general may, upon his own motion or upon the sworn complaint of any two legal voters within the county in which any person holding a certificate of registration to practice any of the healing arts resides, prefer charges to the superior court of such county against such person, alleging that he procured such certificate through fraud, and said court shall, within fourteen days thereafter, summon such person to appear before it at a given time and place to show cause why his certificate of registration should not be revoked. Such summons may be served by any proper officer by leaving a copy thereof with the accused or at his usual place of abode at least six days before the same shall be returnable. If such court shall, upon hearing, find such charges to be sustained, it shall certify such finding to the commissioner of health, who shall thereupon revoke such certificate. The procedure authorized in this section shall be in addition to any procedure authorized by any other statutory provision." By means of this statute the public may be protected even though either the state department of health or the examining board fails or refuses to act or acts improperly.

The action of the board of natureopathic examiners on July 10, 1947, purporting to revoke the certificate of approval granted to the plaintiff on November 14, 1946, was not effective to operate as a revocation of said certificate, which certificate still remains in full force and effect.

Section 753i, Sup. 1947, effective July 8, 1947, repealing § 545g, Sup. 1943, and thereby putting an end to the authority of the board of natureopathic examiners to enter into agreements of reciprocity with another state, has no application in the present case. The substantive rights of the plaintiff acquired under § 545g, in force at the time of plaintiff's application and the granting of his certificate of approval, are governed by the law in effect at that time. See *Hart* v. *Board of Examiners of Embalmers,* 129 Conn. 128; *Demarest* v. *Zoning Commission,* 134 Conn. 572.

The allegations of the plaintiff's complaint are found proven. The allegations of the defendant's defense that the certificate of approval to practice natureopathy in this State was obtained through fraud and deceit are found not proven. The evidence does not impugn either the conduct or character or the profes-sional ability or capacity of the plaintiff. The purported revoca-tion of plaintiff's certificate of approval was ineffective, and § 753i has no bearing on the issues in this case. The plaintiff is entitled to a certificate of registration from the state depart-ment of health as a matter of legal right. It has no discretion to deny it.

The evidence fails to disclose facts from which it may be reasonably concluded that the performance of the act demanded of the state health commissioner would be in aid of a palpable fraud or would promote a wrong or be contrary to public inter-est, justifying a refusal by the court to grant the relief to which the plaintiff is otherwise entitled as a matter of legal right.

It is therefore ordered that the defendant Stanley H. Osborn, health commissioner for the state of Connecticut, as administra-tive head of the state department of health (§ 407f, Sup. 1941) issue forthwith to the plaintiff William D. Taylor a certificate of registration to practice natureopathy in the state of Connecticut pursuant to General Statutes, § 2767.